**No. 2024-1876; 2024-1885**

# United States Court of Appeals for the Federal Circuit

**ORANGE ELECTRONIC CO. LTD.**
*Plaintiff-Appellant*

v.

**AUTEL INTELLIGENT TECHNOLOGY CORP., LTD.**
*Defendant-Cross-Appellant*

Appeal from the United States District Court for the Eastern District of Texas, Case No. 2:21-cv-00240-JRG

**NON-CONFIDENTIAL APPELLANT'S OPENING BRIEF**

John F. Rabena
William H. Mandir
SUGHRUE MION, PLLC
2000 Pennsylvania Avenue NW
Washington, DC 20006
Tel: (202) 293-7060
Fax: (202) 293-7860
*Attorneys for Appellant Orange*

July 29, 2024

# CERTIFICATE OF INTEREST

Counsel for Appellant Orange Electronic Co. Ltd certifies the following:

1. The full name of every party represented by us is:

   Orange Electronic Co. Ltd.

2. The name of the real party in interest represented by us is:

   None

3. All parent corporations and any other publicly held companies that own 10 percent or more of the stock of the party:

   Standard Motor Products, Inc.

4. The names of all law firms and partners or associates that appeared for Orange Electronic Co. Ltd. before the originating court or are expected to appear in this court (and who have not or will not enter an appearance in this case) are:

   **Sughrue Mion, PLLC:** Carl J. Pellegrini, Young Sun Kwon, and Fadi N. Kiblawi

   **The Heartfield Law Firm:** J. Thad Heartfield

5. The title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by the court's decision in the pending appeal:

   None.

6. Organizational Victims and Bankruptcy Cases. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6):

   Not applicable.

Dated: July 29, 2024

By: *<u>/s/ John F. Rabena</u>*
John F. Rabena
William H. Mandir

*Attorneys for Appellant*
*Orange Electronic Co. Ltd.*

# Table of Contents

CONTENTS

**JURISDICTIONAL STATEMENT** .......... 1

**STATEMENT OF THE ISSUE** .......... 1

**STATEMENT OF THE CASE** .......... 1

A. The Technology at Issue .......... 1

B. Autel ITC's Sales of the Accused Products .......... 2

C. The District Court's Decision .......... 3

**SUMMARY OF THE ARGUMENT** .......... 3

**STANDARD OF REVIEW** .......... 5

**ARGUMENT** .......... 5

A. The District Court Disregarded Substantial Evidence of Sales Within the United States, Instead Improperly Focusing on the Impact of Shipping "f.o.b. China" .......... 5

B. The District Court Also Erroneously Disregarded Substantial Evidence that Autel ITC Offered to Sell Accused Products in the United States .......... 9

C. The District Court Also Erroneously Disregarded Substantial Evidence that Autel ITC Imported Accused Products into the U.S. .......... 11

D. The District Court Misapplied the *Halo* Decision .......... 12

**CONCLUSION** .......... 22

CONFIDENTIAL MATERIAL STATEMENT:

The material redacted from this brief on pages 3 and 11 is subject to a protective order. The information redacted relates to a unit price, volume of products sold, and total price, and has been designated confidential pursuant to that protective order.

# Table of Authorities

## Cases

*3D Sys. v. Aarotech Labs., Inc.*, 160 F.3d 1373 (Fed. Cir. 1998)............................11

*Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350 (Fed. Cir. 2017) .................................................................................................................8

*Bear Ranch, L.L.C. v. HeartBrand Beef, Inc.*, 885 F.3d 794 (5th Cir. 2018)............5

*Bigelow v. RKO Radio Pictures, Inc.*, 327 U.S. 251 (1946)....................................18

*Canton Railroad Co. v. Rogan*, 340 U.S. 511, 95 L. Ed. 488, 71 S. Ct. 447 (1951) ...............................................................................................................12

*Cunard Steamship Co. v. Mellon*, 262 U.S. 100, 67 L. Ed. 894, 43 S. Ct. 504 (1923)...........................................................................................................12

*Cybiotronics, LTD. v. Golden Source Electronics, LTD.*, 130 F. Supp.2d 1152 (D.C. Cal. 2001)............................................................................. 13, 14

*Eastman Kodak Co. v. Southern Photo Co.*, 273 U.S. 359 (1927)...........................18

*Elbit Systems Land v. Hughes Network Systems*, 927 F. 3d 1292 (Fed. Cir. 2019) ..5

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 831 F.3d 1369 (Fed. Cir. 2016)...................... ..................................................................... 12, 15, 16. 17, 18, 19, 20

*i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831 (Fed. Cir. 2010) ............................5

*Litecubes, L.L.C. v. Northern Light Prods.*, 2006 U.S. Dist. LEXIS 60575 (E.D. Mo. 2006)............................................................................................ 14, 15, 21

*Litecubes, LLC v. Northern Light Products, Inc.*, 523 F.3d 1353 (Fed. Cir. 2008) ..................................................................................................... 6, 7, 20

*MEMC Electronic Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369 (Fed. Cir. 2005)...........................................................................................13

*North American Philips Corp. v. American Vending Sales*, 35 F.3d 1576 (Fed. Cir. 1994) ..................................................................................................... 6, 22

*Pfizer, Inc. v. Aceto Corp.*, 853 F. Supp 104 (S.D.N.Y 1994) ................................13

*Poly-America, L.P. v. API Indus., Inc.*, 839 F.3d 1131 (Fed. Cir. 2016) ..................5

*SEB S.A. v. Montgomery Ward & Co.*, 594 F.3d 1360 (Fed. Cir. 2010).. 7, 9, 20, 21

*Story Parchment Co. v. Paterson Co.*, 282 U.S. 555 (1931)...................................18

*Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318 (2015)..................................5

*Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.*, 617 F. 3d 1296 (Fed. Cir. 2010) ................................................................ 10, 16

*WBIP, LLC v. Kohler Co.*, 829 F.3d 1317 (Fed. Cir. 2016)), *cert. denied*, 139 S. Ct. 143, 202 L.Ed.2d 34 (2018).............................................................................8

**Statutes**

35 U.S.C. § 271.................................................................................... 4, 6, 11

## STATEMENT OF RELATED CASES

There are no cases that could affect or be affected by this appeal.

## JURISDICTIONAL STATEMENT

The district court had subject matter jurisdiction over this patent-infringement action under 28 U.S.C. §§ 1331 and 1338. This Court has jurisdiction over the appeal under 28 U.S.C. § 1295(a)(1). The appeal is timely under FED. R. APP. P. 4(a)(1)(A) because the final judgment was entered in the district court on May 3, 2024 (Appx0057), and the notice of appeal was filed on May 22, 2024. No. 24-1876, Dkt. 1.

## STATEMENT OF THE ISSUE

I. Whether the district court erred in finding that no substantial evidence supported the jury's verdict of infringement, namely, in finding that there was no substantial evidence that Defendant's sales, offers for sale, and/or importations were in the United States.

## STATEMENT OF THE CASE

### A. The Technology at Issue

The asserted patent in this case, U.S. Patent No. 8,031,064 C3 ("the '064 patent"), is directed to sensors and programming tools for automotive tire pressure monitoring systems ("TPMS").

### B. Autel ITC's Sales of the Accused Products

The jury found that the accused sensors and programming tools sold by Defendant Autel Intelligent Technology Corp., Ltd ("Autel ITC"), to its U.S. subsidiary Autel U.S. Inc. ("Autel U.S."), infringed the '064 patent.

Autel ITC is located in Shenzhen, China; Autel U.S. is located in Farmingdale, New York. Appx9051. There is no dispute that Autel ITC knew: (i) that its buyer, Autel U.S., was located in the United States, (ii) that it was shipping its products to the United States, and (iii) that the products were intended for use in the United States. Appx3052; Appx3054-3056; Appx3059; Appx9054 ("Sales Contract" showing "Buyer: Autel U.S. Inc. 175 Central Ave Suite 200 Farmingdale NY 11735" and "Port of Destination: USA.")

The Autel ITC sales department in Shenzhen China was responsible for shipping the products to the buyer, Autel U.S., with a shipping destination of Autel U.S.'s headquarters in New York. Appx3056; Appx9051-9068. Every product on the "Packing List" has a listed "Destination: USA" (Appx9052-Appx9053) and the Sales Contracts identify the "Port of Destination: USA." Appx9054, Appx9061.

There is also no dispute that Autel ITC and Autel U.S. renegotiate the terms of these sales, including prices and quantities, on a weekly basis for their products in general, and on an as-needed basis for the accused products. Appx3057-3058;

Appx9054 (showing “Typre (sic) Pressure Diagnostic Tool” with a Quantity of “[redacted]PCS” at a “Unit Price” of “[redacted]” for a total “Amount” of “[redacted].”

### C. The District Court’s Decision

The district court concluded that the above evidence was not substantial evidence of sales, offers, or importations in the United States, and overturned the jury’s finding of infringement on this basis. In overturning the jury’s verdict, the district court cited testimony of Autel ITC’s witness that it sold these products to Autel U.S. in China (via an f.o.b. China designation), that the title passed to Autel U.S. while in China (via the f.o.b. China designation), and that the general “Distributorship Agreement” was signed in China by Autel ITC (although not by Autel U.S.). Appx0037-0038.

## SUMMARY OF THE ARGUMENT

The district court’s decision[1] disregards substantial evidence that Defendant Autel ITC sold, offered to sell, and imported the accused products in the United States. The district court’s decision is based only on evidence that supported the Defendant’s position, and disregards the substantial evidence that supported the jury’s verdict. Appx2380-2388. For example, the district court’s decision overlooks that the Sales Contracts, Packing Lists, and Commercial Invoices all designate the “Buyer” as “Autel U.S. Inc.” located in “Farmingdale NY”, and the

[1] Appx0022-0043 (Memorandum Opinion and Order)

"Destination" or "Port of Destination" as "USA." Appx9051-Appx9061. The decision also overlooks that Autel ITC's witness testified that her department in Shenzhen China performs the actual shipping of the products, and those shipments are directly to the New York headquarters of Autel U.S. Appx3052; Appx3054-3056; Appx3059; *see also*, Appx9054.

Instead, the Decision relies on the fact that Autel ITC's products were shipped f.o.b. China, and that caused the title to pass to Autel ITC's New York customer Autel U.S., while the products were still located in China. Appx37-38. This Court has addressed these types of f.o.b. sales arrangements when raised as both jurisdictional and substantive defenses to infringement under 35 U.S.C. § 271(a), and held a contract between a seller and its U.S. buyer that calls for shipment f.o.b. in a location outside the U.S., does not allow the seller to escape liability as a direct infringer.

There was substantial evidence in the trial record to support the jury's verdict of Autel ITC's infringement, including substantial evidence that Autel ITC sold, offered to sell, and/or imported the infringing products in the United States, thus violating 35 USC § 271(a).

## STANDARD OF REVIEW

This Court reviews the district court's legal conclusions *de novo*. *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 331 (2015); *Poly-America, L.P. v. API Indus., Inc.*, 839 F.3d 1131, 1135-36 (Fed. Cir. 2016).

A jury verdict of infringement can only be reversed as a matter of law, if it is not supported by substantial evidence. *see, e.g., Elbit Systems Land v. Hughes Network Systems*, 927 F. 3d 1292, 1296 (Fed. Cir. 2019), citing *Bear Ranch, L.L.C. v. HeartBrand Beef, Inc.*, 885 F.3d 794, 801 (5th Cir. 2018); *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 841 (Fed. Cir. 2010) (following Fifth Circuit law), *aff'd on other issues*, 564 U.S. 91, 131 S.Ct. 2238, 180 L.Ed.2d 131 (2011).

## ARGUMENT

### A. The District Court Disregarded Substantial Evidence of Sales Within the United States, Instead Improperly Focusing on the Impact of Shipping "f.o.b. China"

This Court's precedent makes clear that selling products f.o.b. a foreign country, to a U.S. customer, does not negate an otherwise infringing sale. This Court has explained that shipping products f.o.b. does not restrict the sale to the f.o.b. location, and does not negate jurisdiction at the ultimate destination of the shipment, as "[t]o hold otherwise would exalt form over substance." *North American Philips Corp. v. American Vending Sales*, 35 F.3d 1576, 1579 (Fed. Cir.

1994). This Court elaborated on the *North American Philips* analysis, in *Litecubes, LLC v. Northern Light Products, Inc.*, 523 F.3d 1353, 1369 (Fed. Cir. 2008):

> In *North American Philips Corp. v. American Vending Sales, Inc.*, 35 F.3d 1576 (Fed. Cir. 1994), a personal jurisdiction case, this court rejected the notion that simply because goods were shipped f.o.b., the location of the "sale" for the purposes of § 271 must be the location from which the goods were shipped.
>
> *North American Philips* rejected the formalistic approach and concluded that ***regardless of whether the goods were shipped f.o.b., "to sell an infringing article to a buyer in Illinois is to commit a tort there*** (though not necessarily only there.)." *Id.* (explaining that "to hold otherwise would ***exalt form over substance*** in an area where the Supreme Court has generally cautioned against such an approach" (*citing Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)).

*Id*. (emphasis added). This Court further explained that the analysis is the same, whether the question is raised in a jurisdictional/standing context or a substantive infringement context under § 271(a).

> While *North American Philips* dealt with the issue of where a "sale" took place under § 271 in the context of personal ***jurisdiction***, we see no basis for construing the location of a "sale" differently when the issue is whether the plaintiff has established that the sale took place within the United States for the purposes of ***infringement***.

*Id*. at 1370. Applying the *North American Philips* reasoning, this Court upheld the sale location in the *Litecubes* case to also be "within the United States" despite the fact that the products were shipped f.o.b. Canada:

> GlowProducts bases its argument that these were not sales in the United States on the grounds that the products were shipped f.o.b., and thus title over the goods were transferred while the goods were still in Canada. Our

> case law, however, is inconsistent with such a theory, and we conclude that there is substantial evidence of a sale within the United States for the purposes of § 271.

*Litecubes, LLC v. Northern Light Products, Inc.*, 523 F.3d 1353, 1369 (Fed. Cir. 2008). This Court upheld a similar verdict of direct infringement in *SEB S.A. v. Montgomery Ward & Co.*, 594 F.3d 1360, 1375 (Fed. Cir. 2010):

> To the contrary, the only evidence on which Pentalpha relies to argue that its sales occurred overseas was that it delivered its products to Sunbeam, Montgomery Ward, and Fingerhut ***f.o.b. Hong Kong or mainland China***. This court has “"rejected the notion that simply because goods were shipped f.o.b., the location of the ‘sale’ for the purposes of § 271 must be the location from which the goods were shipped.” *Litecubes*, 523 F.3d at 1370.
>
> ***
>
> [T]he court instructed the jury that it could consider the f.o.b. terms, even though those terms were ***not dispositive***. Other than the f.o.b. terms in the invoices presented to the jury, the record shows that Pentalpha ***intended*** to sell its deep fryers ***directly into the United States***. Pentalpha itself affixed the American trademarks of Sunbeam, Montgomery Ward, and Fingerhut to the deep fryers, and it manufactured the deep fryers with North American electrical fittings. Moreover, the ***invoices*** between Pentalpha and the three U.S. companies ***all identify delivery to U.S. destinations***. In sum, this court does not perceive any fundamental error with the jury instructions in light of the record evidence.

As in *SEB SA*, the jury considered Autel ITC’s f.o.b. shipments, yet found that Autel ITC infringed the asserted ‘064 patent claims as the jury also heard evidence of Autel ITC’s sales activity in connection with the sale and delivery of the accused products to Autel U.S. at its New York location. “[W]here there is a

black box jury verdict, as is the case here, we presume the jury resolved underlying factual disputes in favor of the verdict winner and leave those presumed findings undisturbed if supported by substantial evidence." *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1358 (Fed. Cir. 2017), (*citing WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1326 (Fed. Cir. 2016)), *cert. denied*, 139 S. Ct. 143, 202 L.Ed.2d 34 (2018). The record here includes more than substantial evidence to support the jury verdict.

There was no dispute that Autel U.S. is Autel ITC's customer in the United States, and that Autel ITC intended to sell its products into the U.S., just like in *SEB SA*. Indeed the representative sale contracts are each titled "Sales Contract" and identify the "Seller: Autel ITC" and the "Buyer: Autel U.S. Inc. 175 Central Ave Suite 200 Farmingdale NY 11735". Appx9054, Appx9061. Autel ITC's witness confirmed its intent and awareness:

> Q. Okay. Because the buyer or your customer in this contract is Autel U.S., you -- Autel ITC knows that this is going to the U.S. Right?
> A. Yes, we know where our customer is located and that is going to the U.S.

Appx3059

> Q. But Autel ITC does sell these products to a company in the United States, doesn't it?
> A. Yes. It's -- the products are sold to Autel U.S. That is in the United States."

Appx3052

> Q. Let's take one of these, the first one, as an example. The diagnostic tool, that's one of the accused products. Right?
> A. Yes.
> Q. And the buyer is identified as Autel U.S., Incorporated?
> A. Yes.
> Q. And the destination on the right is USA?
> A. Yes, the destination of the shipment of these products is USA.

Appx3054. Autel ITC even obtained the necessary FCC certifications and other approvals required for importation into the U.S. Appx7245 ("Autel shall supply Autel Products with the necessary ***FCC*** and RoSH ***certification*** and approvals required from ***importation*** of the Product ***into the United States***.")(emphasis added).

To be sure, this is not a scenario where Autel ITC was blind to what its customer would do with the products; Autel ITC knew and intended that these products were going to the U.S., just like in *SEB SA. SEB S.A.*, 594 F.3d 1360, 1375 (finding the ultimate U.S. destination identified on the invoice, as well as the seller's intent and knowledge of the ultimate U.S. destination, to be substantial evidence to support the jury's finding of infringement, despite the sale being f.o.b. China or Hong Kong). In fact, not only did Autel ITC know and intend for the accused products to go to the U.S., Autel ITC was the entity that actually shipped them to the U.S. Appx3052; Appx3054-3056; Appx3059; *see also*, Appx9054.

### B. The District Court Also Erroneously Disregarded Substantial Evidence that Autel ITC Offered to Sell Accused Products in the United States

The same is true for "offers to sell" as with actual sales. In *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.*, 617 F. 3d 1296, 1309 (Fed. Cir. 2010), the sales agreement was executed outside of the United States and contemplated that the U.S. purchaser would be the one to import the accused product into the United States. This Court held that such a transaction was an offer to sell products within the United States notwithstanding the location of the contract execution, or which party handled the shipping. *Id*. at 1309 ("Neither *Rotec* nor *MEMC* preclude our determination that an offer by a U.S. company to sell a patented invention to another U.S. company for delivery and use in the U.S. constitutes an offer to sell within the U.S").

Autel ITC's repeated offers and renegotiated "Sales Contracts" (e.g., Appx9054; Appx9061) to sell to Autel U.S. are "offers to sell" that constitute additional direct infringements under *Transocean.* Ms. Jeiying Chen, the sales operations manager at Autel ITC, testified that Autel ITC and Autel U.S. entered into Sales Contracts like those shown in Appx9054 on a weekly basis for their products in general, and that these contracts include the accused products like those listed in Appx9054 and Appx9061 on an as-needed basis. Appx3033; Appx3057-3058. She also explained that the terms of these contracts such as price and quantities, were occasionally renegotiated between the parties, and the contracts themselves reflect the prices and volumes of accused products. *Id*.; Appx9054

(showing "Typre (sic) Pressure Diagnostic Tool" with a Quantity of "amount PCS" at a "Unit Price" of "price" for a total "Amount" of "price" The renegotiations of these terms with a U.S. customer for delivery to that U.S. customer in the U.S., constitute new "offers to sell" infringing products. *3D Sys. v. Aarotech Labs., Inc.*, 160 F.3d 1373, 1379 (Fed. Cir. 1998) ("As a matter of federal statutory construction, the price quotation letters can be regarded as 'offers to sell' under § 271 based on the substance conveyed in the letters, i.e., a description of the allegedly infringing merchandise and the price at which it can be purchased."). Both the offers to sell and the completed sales to Autel U.S. are separate acts of infringement that support the jury's verdict.

### C. The District Court Also Erroneously Disregarded Substantial Evidence that Autel ITC Imported Accused Products into the U.S.

Substantial evidence also exists to support the verdict that Autel ITC "imported" the accused products in violation of § 271(a) as well. Appx9054 (Sales Contract showing "Port of Destination: USA"; Appx3056 ("Q. Ms. Chen, in your deposition you were asked the question, 'Is your group responsible for shipping these products to Autel U.S.?' And you answered, 'Yes.' Isn't that true? A. Yes. []"). The district court discounted this testimony in favor of Ms. Chen's other testimony that Autel U.S. is responsible for paying the shipping costs (Appx0038); but paying the shipping costs is not dispositive to whether Autel ITC imported the

infringing products. *Cunard Steamship Co. v. Mellon*, 262 U.S. 100, 122, 67 L. Ed. 894, 43 S. Ct. 504 (1923) ("Importation, in a like sense, consists in bringing an article into a country from the outside. If there be an actual bringing in it is importation regardless of the mode in which it is effected. Entry through a custom house is not the essence of the act."). *See also Canton Railroad Co. v. Rogan*, 340 U.S. 511, 515, 95 L. Ed. 488, 71 S. Ct. 447 (1951) ("to import means to bring into the country").

Although the infringement verdict need only be supported by substantial evidence of *either* a sale, offer to sell, or importation, the record includes substantial evidence of all three types of direct infringement.

### D. The District Court Misapplied the *Halo* Decision

The district court based its decision on its interpretation of *Halo*[2]. Namely, the district court decision implies that *Halo* somehow changed the law set forth in *Litecubes*, *SEB S.A.*, and *Transocean*. Appx36 ("The Court finds that *Litecubes*, *SEB S.A.*, and *Transocean* must be read in light of the more recent guidance of *Halo*."). But the law applied in these cases is entirely consistent with the law of *Halo;* rather, it is the *facts* of *Halo* that are decidedly different.

[2] *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 831 F.3d 1369 (Fed. Cir. 2016).

The defendant in *Halo*, like the defendants in *Cybiotronics*[3], *Pfizer*[4], and *MEMC*[5] all sold to true foreign intermediary companies, *i.e.*, companies located outside the U.S., and those foreign intermediaries then subsequently sold and shipped to customers in the U.S. Autel U.S. is not a foreign "intermediary" as in these cases because it is located in the United States and received the products in the United States. So when Autel ITC offered, sold, and shipped to Autel U.S., those were acts of direct infringement because unlike these other cases, Autel U.S. is located in the U.S. and received the infringing products there.

The *Litecubes* district court decision explained this difference as it distinguished the facts of *Cybiotronics*, *Pfizer*, and *MEMC*, because in all three of those cases, the defendant sold to a true foreign intermediary. Distinguishing *Cybiotronics*, that court found that the defendant Golden Source Electronics, Ltd ("GSE") sold the products from China to an intermediary company NAFT; NAFT was located in Hong Kong and physically received the products in Hong Kong.

> [Defendant Golden Source Electronics'] Engineers designed the phone in Korea, and the phones were manufactured at facilities located in China. Once the products passed inspection in China, they were ***shipped [to] NAFT in Hong Kong***. ***NAFT would then sell the phones to United States' company***, ***BellSouth***. Defendant argued that it could not be liable for direct

---

[3] *Cybiotronics, LTD. v. Golden Source Electronics, LTD.*, 130 F. Supp.2d 1152 (D.C. Cal. 2001)

[4] *Pfizer, Inc. v. Aceto Corp.*, 853 F. Supp 104 (S.D.N.Y 1994)

[5] *MEMC Electronic Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369 (Fed. Cir. 2005)

> infringement because all of its activities relating to the accused products took place in Hong Kong, China, or Korea. The Federal Circuit agreed, finding, *inter alia*, that defendant was not an "importer" because "[***a]ny and all*** activity that might be considered 'import[ing] into the United States' was ***conducted by either NAFT or by BellSouth***, and ***[defendant] itself was not the 'importer'*** of the accused products."

*Litecubes, L.L.C. v. Northern Light Prods*., 2006 U.S. Dist. LEXIS 60575, *7 (E.D. Mo. 2006) (emphasis added). Autel ITC is not like GSE because GSE sold and shipped the products to the intermediary company NAFT in Hong Kong; NAFT physically received and resold the products to BellSouth while the products were still in Hong Kong. *Cybiotronics,* 130 F. Supp. 2d at 1158-1159 ("… ***while the telephones sold to NAFT were still in Hong Kong***, NAFT would then in turn sell the telephones to BellSouth..."). *Litecubes* distinguished *Pfizer* for similar foreign "intermediary" reasons. *Litecubes,* 2006 U.S. Dist. LEXIS 60575 *7-8 ("In *Pfizer*, Anhui, a Chinese manufacturer sold a flavor enhancer ***to another Chinese corporation, which in turn, sold the product to American companies***. The court held that Anhui was not an importer of the product.") The same is true in *MEMC*, where defendant SUMCO was located in Japan and sold the products to Samsung Japan in Japan, who then sold the products to Samsung Austin in the United States. The *Litecubes* court distinguished these cases because rather than selling to a true foreign third party intermediary who then sold to a U.S. customer, the defendant in

*Litecubes* sold directly to the U.S. customer and was involved in shipping the products to that U.S. customer.

> Once Defendant received an order from a customer in the United States, the Defendant shipped the product ***at the direction and expense of the purchaser***. Bob Bryant, the President of Northern Light Products, testified that the large majority of the sales in U.S. dollars were sales to customers in the United States. Thus, unlike *Cybiotronics* and *Pfizer*, there was ***no intermediary***; here, ***Defendant was the importer***.

*Litecubes*, 2006 U.S. Dist. LEXIS 60575, *9-10.

The products in *Halo* were also sold and actually delivered to a foreign intermediary company that was physically located outside the United States. That intermediary company then sold and delivered the products to the U.S. customer.

> … [Defendant] Pulse ***delivered*** the ***electronic package products*** from its manufacturing facility in Asia ***to*** Cisco ***contract manufacturers***, also located ***in Asia***, ***which then paid Pulse***. After assembling the end products, the ***contract manufacturers*** submitted invoices to Cisco that itemized the cost of Pulse products and other components that were incorporated into the Cisco end products. ***Cisco then paid the contract manufacturers for the end products***.

*Halo*, 831 F.3d at 1374. This Court found the foreign intermediary companies to be the key reason why Pulse was not a direct infringer. *Id*. at 1378 ("… Pulse received purchase orders from Cisco's foreign ***contract manufacturer*** [not from Cisco in the U.S.]") (emphasis added). Also "Pulse was paid abroad ***by those contract manufacturers, not by Cisco***…" *Id*. at 1378 (emphasis added). This Court also found it important that "[a]lthough Pulse and Cisco had a general

business agreement, that agreement did not refer to, and was not a contract to sell, any specific Product." *Id.* at 1378. The opposite is true with Autel ITC and Autel U.S., as they had actual "Sales Contract[s]" for specific products with prices and quantities. Appx9054, Appx9061.

The district court also did not apply the precedent in *Transocean* that "the location of the contemplated sale controls whether there is an offer to sell within the United States." Appx0035; *Transocean*, 617 F.3d at 1309. The "location" that *Transocean* found dispositive was the destination of the products, not where the offer was made. This Court held that the offer to sell a product "for delivery and use in the U.S. constitutes an offer to sell within the U.S." even though the offer was negotiated and signed outside the U.S. *Id.* at 1309. Thus, *Transocean* further supports the jury's verdict that Autel ITC is a direct infringer. The district court discounts *Transocean* because *Halo* is more recent. Appx035, fn. 9. But *Halo* is not inconsistent with *Transocean*; in *Halo* the destination of the defendant Pulse's sale was the contract manufacturers in China, whereas in *Transocean* as well as the instant case, the destination of the defendants' sales was the United States.

The district court's Decision quoted repeatedly from the *Halo* conclusion[6] (e.g., Appx0030, Appx0035, Appx0037), but each time ignored or misapplied parts

---

[6] "[W]hen substantial activities of a sales transaction, including the final formation of a contract for sale encompassing all essential terms as well as the delivery and

of that quote. That quote includes recognition that the "essential terms" of a sale include the "delivery and performance under the sales contract" as well as the "final formation of a contract for sale." But in the district court's analysis of the facts, it ignores the substantial evidence regarding the "delivery and performance," as well as the "final formation of a contract for sale."

To this end, the district court was incorrect to conclude that the "final formation of a contract for sale, encompassing all the essential terms, occurred in China" and that no substantial evidence indicated otherwise. Appx037. First, the general Distributorship Agreement that the district court relies upon was not signed by both parties in China -- only Autel ITC signed the general Distributorship Agreement while in China in 2016. Appx037. The district court ignored the fact that the CEO of Autel U.S. signed that agreement three years later in 2019, without a China stamp. Appx7259. Thus, it was reasonable for the jury to infer that the CEO of Autel U.S. signed that agreement in 2019 from her principal place of business as identified in the document she signed, *i.e.*, New York. Appx7241; Appx3245 (district court instructing the jury: "Now, while you are to consider only the evidence in this case, you as the jury are permitted to draw such

---

performance under that sales contract, occur entirely outside the United States, pricing and contracting negotiations in the United States alone do not constitute or transform those extraterritorial activities into a sale within the United States for purposes of § 271(a)." Appx0030, quoting *Halo,* 831 F.3d 1369, 1378.

reasonable inferences from the testimony and the exhibits as you feel are justified in the light of common experience. In other words, ladies and gentlemen, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in this case."). *Bigelow v. RKO Radio Pictures, Inc.*, 327 U.S. 251 (1946) ("juries are allowed to act upon probable and inferential, as well as direct and positive proof.") citing *Story Parchment Co. v. Paterson Co.*, 282 U.S. 555, 561-4 (1931); *Eastman Kodak Co. v. Southern Photo Co.*, 273 U.S. 359, 377-9 (1927).

More importantly, the Distributorship Agreement was *not* the "final formation of a contract for sale, encompassing all the essential terms." Appx0037 (quoting *Halo*). The Distributorship Agreement was not a sales contract at all, nor was it an invoice or a final offer to sell. Rather, the Distributorship Agreement was a general business agreement outlining the relationship and obligations between Autel ITC and Autel U.S. Appx7241-7267. The Distributorship Agreement contained no UCC-level terms of any sale; e.g., no prices or volumes of products, and expressly states that those terms will be negotiated later. Appx7247 ("The final price … shall be agreed by the parities (sic) after discussion."). Rather, the jury was provided representative samples of actual "Sales Contract(s)," "Invoices" and "Packing Lists" in Appx9051-9068, which included the negotiated prices and volumes, as well as the designations for "Seller: Autel ITC" and "Buyer: Autel

U.S. Inc. 175 Central Ave Suite 200 Farmingdale NY 11735", and "Port of Destination: USA." Appx9054, Appx9061. The jury heard testimony that the actual terms of the "Sales Contracts" were renegotiated between Autel ITC and Autel U.S. on a regular basis. Appx3057-3058; Appx9054. The Sales Contracts, Invoices and Packing Lists provided substantial evidence for the jury to conclude that Autel ITC had offered to sell the accused products to its buyer Autel U.S. in the United States, and ship them to the "Port of Destination: USA."

In *Halo*, there were no actual sales contracts or invoices between Pulse and Cisco, like we have here between Autel ITC and Autel U.S. Rather in *Halo*, there were purchase orders between Pulse and the foreign contract manufacturers for the accused parts (electronic package products) (*Halo*, 831 F. 3d 1369, 1377), and invoices between the foreign contract manufacturers and Cisco for the end products that included the accused parts (e.g., internet routers). *Halo*, 831 F.3d 1369, 1373-4.

The district court also ignored the part of the *Halo* quote that focused on the "delivery and performance under that sales contract." The jury had substantial evidence to support that the "delivery and performance" under the Sales Contracts were directly to Autel U.S. in New York. Appx3052, Appx3054-3056, Appx3059; Appx9054, Appx9061. Every product on the "Packing List" had a listed "Destination: USA" (Appx9052-9053, Appx9060), and the "Sales Contract[s]"

also identify the "Buyer: Autel U.S. Inc. 175 Central Ave Suite 200 Farmingdale NY 11735" and "Port of Destination: USA." Appx9054, Appx9061. *Halo*, 831 F.3d 1369, 1377 ("… a sale may occur at multiple locations, including the location of the buyer…").

Thus, unlike *Cybrionics*, *Pfizer*, *MEMC*, and *Halo*, Autel ITC did not sell and ship to an intermediary foreign company located outside the U.S., who then resold the accused products to Autel U.S. Autel ITC sold and shipped the accused products directly to Autel U.S. The f.o.b. shipping designation does not convert Autel U.S. to an intermediary company located outside the United States. *Litecubes*, 523 F.3d at 1369; *SEB SA*, 594 F.3d at 1375.

The diagram below illustrates how each of the cases relied on by the district court had a true intermediary company (in red) that physically received the products outside the U.S., whereas Autel ITC and the defendants in *Litecubes* and *SEB S.A.* sold and shipped directly to customers in the United States (as shown in green). In other words, the cases represented below by green paths show direct infringing sales, offers, and importation into the U.S. and were found to be directly infringing, whereas the cases represented by black/red paths do not, and were found not to directly infringe.




Just like in *Litecubes* and *SEB S.A.*, Autel ITC negotiated and fulfilled orders received from its customer in the U.S., Autel U.S., then processed those orders and shipped the products directly to the customer in the U.S. Appx9054, Appx9061; Appx3052, Appx3054-3056, Appx3059. The facts here align closely to those in *Litecubes* and *SEB S.A.*, where the defendant tried to argue that shipping f.o.b. a foreign country, and/or shipping "at the direction and expense of the purchaser" avoided direct infringement. The *Litecubes* district court as well as this Court have rejected these arguments and held that such shipping details do not insulate the supplying company from direct infringement. *Litecubes* at *9-10; *SEB S.A.*, 594 F.3d at 1375 (finding the ultimate U.S. destination identified on the invoice, as well as the seller's intent and knowledge of the ultimate U.S. destination, to be substantial evidence to support the jury's finding of infringement, despite the sale

being f.o.b. China or Hong Kong). Accordingly, as in *Litecubes* and *SEB S.A.,* Ms. Chen's testimony that Autel U.S. is responsible for paying the shipping costs does not insulate Autel ITC from direct infringement. Moreover, the jury heard evidence that Autel ITC is the party that actually ships the purchased products to the U.S. regardless of whether it gets reimbursed for such shipping by Autel U.S. Appx3056.

Properly applying the analysis in *Halo* to the present record, there was substantial evidence for the jury to conclude that "substantial activities of a sales transaction, including the final formation of a contract for sale encompassing all essential terms as well as the delivery and performance under that sales contract," dictated the location of the sale to be the United States. To hold otherwise would "exalt form over substance" as this Court has cautioned against (*North American Philips Corp.* 35 F.3d at 1579), and would allow foreign sellers to avoid liability for direct infringement simply by designating all sales to U.S. customers, as f.o.b. a foreign country.

## **CONCLUSION**

For the reasons above, the Court should reverse the district court's Final Judgment of no infringement and associated Order, and find that substantial evidence supported the jury verdict that Autel ITC sold, offered to sell, and/or imported infringing products in the United States.

Respectfully submitted,

Dated: July 29, 2024

*/s/ John F. Rabena*
John F. Rabena
William H. Mandir
SUGHRUE MION, PLLC
2000 Pennsylvania Avenue NW
Washington, DC 20006
Tel: (202) 293-7060
Fax: (202) 293-7860

*Attorneys for Appellant*
*Orange Electronic Co. Ltd.*

# ADDENDUM

Appx22-56 REMOVED DUE TO CONFIDENTIAL MATERIAL

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| ORANGE ELECTRONIC CO. LTD., *Plaintiff*, v. AUTEL INTELLIGENT TECHNOLOGY CORP., LTD., *Defendant*. | § § § § § § § § § § § | CIVIL ACTION NO. 2:21-CV-00240-JRG |

**<u>FINAL JUDGMENT</u>**

A jury trial commenced in the above-captioned case on June 5, 2023. On June 8, 2023, the jury reached and returned its unanimous verdict finding that (1) Plaintiff Orange Electronic Co. Ltd. ("Plaintiff") proved by a preponderance of the evidence that Defendant Autel Intelligent Technology Corp., Ltd. ("Defendant") infringed claims 26 and 27 of U.S. Patent No. 8,031,064; (2) Defendant did not prove by clear and convincing evidence that claims 26 and 27 of U.S. Patent No. 8,031,064 are invalid as obvious; (3) Defendant did not prove by clear and convincing evidence that the claim elements of U.S. Patent No. 8,031,064, both individually and as an ordered combination, involve only technology that was well-understood, routine, and conventional at the time of the alleged invention; and (4) Plaintiff proved by a preponderance of the evidence that Defendant willfully infringed U.S. Patent No. 8,031,064. (Dkt. No. 159 at 4–7.) The jury ultimately found that Plaintiff proved by a preponderance of the evidence that $6,616,397 would compensate it for its damages for infringement from May 15, 2020 through April 30, 2023. (*Id*. at 8.)

However, subsequent to the trial, the Court granted Defendant's Rule 50(b) Post-Trial Motion concerning infringement. (Dkt. No. 215.) There, the Court held that there is no legally

sufficient evidentiary basis for a reasonable jury to find that Plaintiff proved by a preponderance of the evidence that Defendant infringed claims 26 and 27 of U.S. Patent No. 8,031,064. (*Id.*)

Pursuant to Rule 58 of the Federal Rules of Civil Procedure, and in accordance with the entirety of the record, the Court hereby **ORDERS** and **ENTERS JUDGMENT** as follows:

1. Defendant has not infringed claims 26 and 27 of U.S. Patent No. 8,031,064;
2. Claims 26 and 27 of U.S. Patent No. 8,031,064 are not invalid;
3. Claims 26 and 27 of U.S. Patent No. 8,031,064 are not patent ineligible; and
4. Pursuant to Federal Rule of Civil Procedure 54(d), Local Rule CV-54, and 28 U.S.C. § 1920, Defendant is the prevailing party in this case and shall recover its costs from Plaintiff. Defendant is directed to file its proposed Bill of Costs.
5. Consequently, IT IS ORDERED AND DECREED that Plaintiff take nothing from Defendant.

All other requests for relief and requested by either party but not specifically addressed herein are **DENIED**.

**So ORDERED and SIGNED this 2nd day of May, 2024.**

RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 2024-1876; 2024-1885

**Short Case Caption:** Orange Electronic Co. Ltd. v. Autel Intelligent Technology Corp., Ltd.

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

- ☑ the filing has been prepared using a proportionally-spaced typeface and includes 5,088 words.
- ☐ the filing has been prepared using a monospaced typeface and includes ___________ lines of text.
- ☐ the filing contains ___________ pages / ___________ words / ___________ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. ___________).

Date: 07/29/2024

Signature: /s/ John F. Rabena

Name: John F. Rabena

Save for Filing

FORM 31. Certificate of Confidential Material

Form 31
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF CONFIDENTIAL MATERIAL

**Case Number:** 2024-1876; 2024-1885

**Short Case Caption:** Orange Electronic Co. Ltd. v. Autel Intelligent Technology Corp., Ltd.

**Instructions:** When computing a confidential word count, Fed. Cir. R. 25.1(d)(1)(C) applies the following exclusions:

- Only count each unique word or number once (repeated uses of the same word do not count more than once).
- For a responsive filing, do not count words marked confidential for the first time in the preceding filing.

The limitations of Fed. Cir. R. 25.1(d)(1) do not apply to appendices; attachments; exhibits; and addenda. *See* Fed. Cir. R. 25.1(d)(1)(D).

The foregoing document contains three number of unique words (including numbers) marked confidential.

☑ This number does not exceed the maximum of 15 words permitted by Fed. Cir. R. 25.1(d)(1)(A).

☑ This number does not exceed the maximum of 50 words permitted by Fed. Cir. R. 25.1(d)(1)(B) for cases under 19 U.S.C. § 1516a or 28 U.S.C. § 1491(b).

☐ This number exceeds the maximum permitted by Federal Circuit Rule 25.1(d)(1), and the filing is accompanied by a motion to waive the confidentiality requirements.

Date: 07/29/2024

Signature: /s/ John F. Rabena

Name: John F. Rabena