**Nos. 24-1876, 24-1885**

**IN THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

ORANGE ELECTRONIC CO. LTD,

*Plaintiff-Appellant*,

v.

AUTEL INTELLIGENT TECHNOLOGY CORP., LTD.,

*Defendant-Cross-Appellant*.

On Appeal from the United States District Court for the Eastern District of Texas, No. 2:21-cv-00240-JRG

# REPLY BRIEF OF DEFENDANT-CROSS-APPELLANT

Hao Tan
Shen Wang
ARCH & LAKE LLP
203 N. LaSalle Street, Suite 2100
Chicago, IL 60601
(312) 558-1369

Nicole A. Saharsky
Gary M. Hnath
James A. Fussell, III
Bryan C. Nese
Minh Nguyen-Dang
Clark S. Bakewell
MAYER BROWN LLP
1999 K Street NW
Washington, DC 20006
(202) 263-3052
nsaharsky@mayerbrown.com

# TABLE OF CONTENTS

**Page**


INTRODUCTION .......... 1

ARGUMENT .......... 3

I. THE ASSERTED CLAIMS ARE NOT PATENT ELIGIBLE .......... 3

A. The Asserted Claims Are Drawn To An Abstract Idea .......... 3

B. The Asserted Claims Lack An Inventive Concept .......... 8

II. THE ASSERTED CLAIMS ARE OBVIOUS .......... 12

A. Nihei And Nantz Teach Every Limitation Of The Asserted Claims .......... 12

B. Orange's Remaining Arguments Lack Merit .......... 15

CONCLUSION .......... 19

# TABLE OF AUTHORITIES

**Cases** **Pages(s)**

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
573 U.S. 208 (2014) ... *passim*

*BSG Tech LLC v. Buyseasons, Inc.*,
899 F.3d 1281 (Fed. Cir. 2018) ... 9, 10

*Chamberlain Grp., Inc. v. Techtronic Indus. Co.*,
935 F.3d 1341 (Fed. Cir. 2019) ... 9

*ChargePoint, Inc. v. SemaConnect, Inc.*,
920 F.3d 759 (Fed. Cir. 2019) ... 9, 10

*Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*,
776 F.3d 1343 (Fed. Cir. 2014) ... 4, 6

*cxLoyalty, Inc. v. Maritz Holdings Inc.*,
986 F.3d 1367 (Fed. Cir. 2021) ... 11

*Elec. Power Grp., LLC v. Alstom S.A.*,
830 F.3d 1350 (Fed. Cir. 2016) ... 4

*Enfish, LLC v. Microsoft Corp.*,
822 F.3d 1328 (Fed. Cir. 2016) ... 5, 6

*Eon Corp. IP Holdings v. Silver Spring Networks*,
815 F.3d 1314 (Fed. Cir. 2016) ... 14

*IBM Corp. v. Zillow Grp.*,
50 F.4th 1371 (Fed. Cir. 2022) ... 4, 7

*McRO, Inc. v. Bandai Namco Games America Inc.*,
837 F.3d 1299 (Fed. Cir. 2016) ... 5, 6

*PersonalWeb Techs. LLC v. Google LLC*,
8 F.4th 1310 (Fed. Cir. 2021) ... 4, 6

*SAP Am., Inc. v. InvestPic, LLC*,
898 F.3d 1161 (Fed. Cir. 2018) ... 11

**TABLE OF AUTHORITIES**
**(continued)**

**Cases (continued)** **Pages(s)**

*Secured Mail Sols. LLC v. Universal Wilde, Inc.*,
873 F.3d 905 (Fed. Cir. 2017) ....................................................3

*Smart Sys. Innovations, LLC v. Chi. Trans. Auth.*,
873 F.3d 1364 (Fed. Cir. 2017) ....................................................3, 4, 6, 7

*Solutran, Inc. v. Elavon, Inc.*,
931 F.3d 1161 (Fed. Cir. 2019) ....................................................7

*SRI Int'l, Inc. v. Cisco Systems, Inc.*,
930 F.3d 1295 (Fed. Cir. 2019) ....................................................11, 12

**Statutes**

35 U.S.C. § 101 ....................................................1, 3, 11, 12

35 U.S.C. § 103 ....................................................2, 11, 12

## INTRODUCTION

The asserted claims disclose a system for replacing tire pressure sensors in vehicles. The claimed advance is cloning an old sensor's identifier into a replacement sensor, so that the replacement sensor can be swapped into the vehicle without needing to reprogram the vehicle's onboard computer. As Autel explained, the claims are invalid both because they are drawn to patent-ineligible subject matter, and because they are obvious in light of the prior art. Orange makes a variety of responses, but none carries the day.

First, the claims are not patent-eligible under 35 U.S.C. § 101. They merely describe the abstract idea of updating a tire pressure sensor's identifier using the identifier of an old sensor. Although the claims purport to recite systems that implement the idea, they do so only using generic terms that lay out the basic steps of updating a sensor's identifier. The claims do not provide any details of any particular implementation of the idea.

Orange nonetheless contends that the claims are not drawn to an abstract idea. But time and again, this Court has held that generic claims that are just like these claims are drawn to abstract ideas. Orange further contends that the claims contain an inventive concept, but the only inventive concept it identifies is the concept of cloning a sensor's identifier.

That is the abstract idea itself. This Court has made clear that the inventive concept cannot be the abstract idea itself, because a novel abstract idea still is an abstract idea.

Second, the claims are obvious under 35 U.S.C. § 103. One prior art reference (Nihei) discloses all of the limitations of the asserted claims except the limitations related to copying the identifier from the old sensor to the new sensor. A second prior art reference (Nantz) discloses those limitations. And the unrebutted evidence showed that a person of ordinary skill in the art would have been motivated to combine the references.

The district court concluded that Nihei does not teach the claim limitations of a setting apparatus that is portable and that can receive a manual input. Orange barely defends that conclusion, likely because Nihei plainly teaches those limitations. Orange instead focuses on insignificant differences between the references and the asserted claims, but its arguments do not change the fact that the references together render obvious the limitations in the asserted claims.

For these reasons and the reasons set out in Autel's opening-response brief, the Court should reverse the district court's judgment that the asserted claims are not invalid and should affirm the district court's judgment of non-infringement.

# ARGUMENT

## I. THE ASSERTED CLAIMS ARE NOT PATENT ELIGIBLE

### A. The Asserted Claims Are Drawn To An Abstract Idea

The asserted claims are drawn to patent-ineligible subject matter under 35 U.S.C. § 101 under the two-step framework set out in *Alice Corp. v. CLS Bank International*, 573 U.S. 208 (2014). Claims are directed to an abstract idea at *Alice* step one if they are "directed to a result or effect that itself is the abstract idea," as opposed to "focus[ing] on a specific means or method" of producing that result or effect. *Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 909 (Fed. Cir. 2017) (internal quotation marks omitted).

The asserted claims are paradigmatic examples of claims drawn to an abstract idea. Opening-Response Br. 23-26. The abstract idea here is the idea of cloning the identifier of an old tire pressure sensor into a new sensor, so that the new sensor can replace the old sensor without needing to update any other component of the tire pressure monitoring system. *See* Appx128. "[S]tripped of the technical jargon that broadly describes non-inventive elements (e.g., the 'interfaces' and '[modules]') . . . the patents here really only cover [that] abstract concept." *Smart Sys. Innovations, LLC v. Chi. Trans.*

*Auth.*, 873 F.3d 1364, 1371 (Fed. Cir. 2017) (internal quotation marks omitted). Although the claims invoke technical components such as "modules" and "interfaces," the claims only describe *what* functions those components perform, not *how* they accomplish those functions. Appx128-129. Indeed, the specification depicts the components merely as plain boxes. Appx125; *see* Opening-Response Br. 9 (showing figure).

Thus, despite attempting to create the appearance of disclosing implementations of the abstract idea, in substance the asserted claims just recite the basic steps of the idea. *See* Appx128-29; Opening-Response Br. 23-26. Those steps consist of nothing more than receiving, storing, transmitting, and updating information (the old sensor's identifier). *See id.*

This Court consistently has held that claims that merely describe those types of "functional" data-manipulation steps, without "describ[ing] how to achieve [the] results in a non-abstract way," are drawn to abstract ideas. *IBM Corp. v. Zillow Grp.*, 50 F.4th 1371, 1378 (Fed. Cir. 2022) (internal quotation marks omitted); *see, e.g.*, *PersonalWeb Techs. LLC v. Google LLC*, 8 F.4th 1310, 1316 (Fed. Cir. 2021); *Smart Sys.*, 873 F.3d at 1371-72; *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016); *Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1347 (Fed. Cir. 2014).

Orange's authorities are not to the contrary. Orange cites (Response-Reply Br. 20) *McRO, Inc. v. Bandai Namco Games America Inc.*, 837 F.3d 1299 (Fed. Cir. 2016), and *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1328 (Fed. Cir. 2016), but the claims in those cases were very different. Both cases involved claims that recited specific implementations of methods for improving computer software. The claims in *McRO* recited "a specific implementation" of "rules" for improving a particular computer animation technique "with specific characteristics" and "meaningful requirements." 837 F.3d at 1313-16 (internal quotation marks omitted). Similarly, the claims in *Enfish* recited "a specific implementation of a solution to a problem in the software arts": a "self-referential table for a computer database" that was "designed to improve the way a computer stores and retrieves data in memory." 822 F.3d at 1336-39.

Here, the claims do not recite any specific implementation of the abstract idea of cloning a tire pressure sensor's identifier. The claims do not provide any details about how to configure any of the components in the system to perform the steps of cloning the sensor's identifier; the claims simply say that the components perform those steps. *See* Appx128-129. Notably, Orange does not attempt to compare the claims here to the claims in

*McRO* and *Enfish*, to try to demonstrate that the claims here similarly disclose a specific implementation of the idea of cloning the sensor's identifier. *See* Response-Reply Br. 19-21. And it does not respond to Autel's arguments that the claims here are just like the generic claims this Court held were drawn to abstract ideas in *PersonalWeb*, *Content Extraction*, and *Smart Systems*. *See* Opening-Response Br. 25-26.

Orange makes three other arguments. First, citing *Enfish*, Orange argues (Response-Reply Br. 20-22) that the district court described the abstract idea at too high a level of abstraction. That is incorrect. The district court described the abstract idea here as "updating identification information in the context of a rewritable tire pressure detector." Appx52 (internal quotation marks omitted). That is essentially how Orange itself describes the claims: Orange says that claim 26 recites a system for "obtain[ing] an update identification . . . from an old tire pressure detector" and then "send[ing] the copied identification to a new rewriteable tire pressure detector." Response-Reply Br. 21-22 (internal quotation marks omitted). The district court thus did not "overgeneraliz[e]" the claims. *Id.* at 21.

Second, Orange argues (Response-Reply Br. 22) that the claims do not "simply recite an automated approach to a prior process that used to be handled manually." That is true, but irrelevant. While a claim that describes

automating a formerly manual process using generic technology generally *is* directed to an abstract idea, *IBM Corp.*, 50 F.4th at 1378, the converse is not also true: The fact that a claim does not describe automating a formerly manual process does not mean that *is not* directed to an abstract idea. The question is whether the claims recite the abstract idea or whether they disclose an implementation of that idea. *Id.* The claims here merely describe the abstract idea.

Third, Orange argues (Response-Reply Br. 22-23) that the claims disclose a "arrangement of hardware components" that operates differently from prior tire pressure monitoring systems. But whether the ordered combination of the claims is unconventional is an *Alice* step two question, not a step one question. *See Smart Sys.*, 873 F.3d at 1373. The question at step one is what the claims are "directed to." *Id.* Here, the claims merely are directed to cloning a tire pressure sensor's identifier. Appx128-129. Even if the solution provided is novel and addresses "a real-life technical problem," Response-Reply Br. 23, if the solution is an abstract concept, it fails at step one, *Solutran, Inc. v. Elavon, Inc.*, 931 F.3d 1161, 1169 (Fed. Cir. 2019).

### B. The Asserted Claims Lack An Inventive Concept

At *Alice* step two, courts search for an "inventive concept" – *i.e.*, "an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." 573 U.S. at 217-18 (internal quotation marks omitted). Critically, the abstract idea itself cannot provide the inventive concept – there must be "something more" in the claims, such as an unconventional ordering of elements that show inventiveness beyond just the abstract idea. *Id.* at 217 (internal quotation marks omitted).

The evidence here was insufficient for the jury to conclude that the asserted claims contain an inventive concept. *See* Opening-Response Br. 27-36. It was undisputed that the claims use conventional components; indeed, Orange's expert, Joseph McAlexander, admitted that "each of the identified independent components that are required by the [asserted claims] may be available in a toolbox [of] the person with ordinary skill in the art." Appx3157-3161. Notably, in its appellate briefing, Orange does not contest that all of the elements in the asserted claims were conventional. *See* Response-Reply Br. 23-29.

Instead, Orange argues (Response-Reply Br. 26-29) that McAlexander's testimony sufficiently established that the ordered combination of the

elements was inventive. But the only inventive concept McAlexander identified is the abstract idea itself, *see* Appx3156-58 – and this Court repeatedly has explained that the abstract idea itself cannot supply the inventive concept, Opening-Response Br. 34-36; *see, e.g.*, *Chamberlain Grp., Inc. v. Techtronic Indus. Co.*, 935 F.3d 1341, 1349 (Fed. Cir. 2019); *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 774 (Fed. Cir. 2019); *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290-91 (Fed. Cir. 2018).

*ChargePoint* is just like this case. The claims there were directed to the abstract idea of "communication over a network to interact with a device, applied in the context of [electric vehicle] charging stations." 920 F.3d at 770. The patent owner argued at *Alice* step two that the claims were inventive because they provided "an unconventional solution to technological problems in the field," including the difficulties of finding an available charging station, controlling the station, and paying for electricity. *Id.* at 773-74. The problem with that argument, the Court explained, was that the claims' purported solution to those problems was network-controlled chargers – and "network control [was] the abstract idea itself." *Id.* at 774.

So too here. According to McAlexander, the asserted claims are inventive because they provide a novel solution to the problem of needing to update the vehicle's on-board computer (or "controller") when replacing tire

pressure sensors. Appx3156-3158. But that solution is cloning the old sensor's identifier, which allows the user to "change the identity of [the sensor in] each wheel without having to go back and make an adjustment to the vehicle's controller." *Id.* That is just the abstract idea, and so it "cannot supply the inventive concept" as a matter of law. *ChargePoint*, 920 F.3d at 774 (quoting *BSG Tech*, 899 F.3d at 1290).

In response, Orange asserts (Response-Reply Br. 28) that the "technical solution" in the asserted claims is "distinct from the defined abstract idea." Orange does not explain further, but it appears to be arguing that the "solution" is "chang[ing] the identity of . . . each wheel without . . . adjust[ing]" the vehicle's on-board computer, which is distinct from the "abstract idea" of "updating identification information" in the new sensor. Appx51-52 (internal quotation marks omitted). But there is no distinction between the two: Updating the identifier of the new sensor to match the identifier of the old sensor is how the asserted claims provide a solution for changing sensors without adjusting the vehicle's on-board computer. The solution thus is just the "use" of the idea of cloning sensor identifiers. *BSG Tech*, 899 F.3d at 1290.

Orange's remaining arguments lack merit. It notes that McAlexander asserted that "'the specific structural and functional arrangements' recited

by the limitations of the asserted claims 'set[] forth [a] technical improvement over the existing systems that were prevalent at that time.'" Response-Reply Br. 27 (quoting Appx3157). But as Autel explained, this Court repeatedly has held that an expert's conclusory assertion of inventiveness is insufficient at step two as a matter of law. *See* Opening-Response Br. 32-34 (citing, among others, *cxLoyalty, Inc. v. Maritz Holdings Inc.*, 986 F.3d 1367 (Fed. Cir. 2021)). Orange has no response on that point.

Orange next suggests (Response-Reply Br. 24-25) that because the asserted claims are not obvious, they are inventive under *Alice* step two. That also is incorrect as a matter of law: This Court has explained that being nonobvious under 35 U.S.C. § 103 is insufficient for eligibility under 35 U.S.C. § 101, because "innovation in ineligible subject matter" still is ineligible. *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1163 (Fed. Cir. 2018). Anyway, the asserted claims here *are* obvious. Opening-Response Br. 36-42; *see* pp. 12-19, *infra*.

Finally, Orange cites (Response-Reply Br. 26) *SRI International, Inc. v. Cisco Systems, Inc.*, 930 F.3d 1295 (Fed. Cir. 2019). But *SRI International* was a step one decision, not a step two decision. *See id.* at 1304. The claims at issue recited a particular method of "using network monitors to detect suspicious network activity" that "improv[ed] the functionality of computers

and computer networks" compared to conventional networks. *Id.* at 1303-04. The Court concluded that the claims were not directed to an abstract idea and thus did not "reach step two." *Id.* at 1304. Here, as explained, the claims are directed to an abstract idea (as the district court correctly determined) – and there is nothing in them beyond using the abstract idea itself, so they are not patent eligible under 35 U.S.C. § 101 as interpreted by *Alice*.

## II. THE ASSERTED CLAIMS ARE OBVIOUS

### A. Nihei And Nantz Teach Every Limitation Of The Asserted Claims

The asserted claims also are invalid as obvious under 35 U.S.C. § 103 in light of two prior art references, U.S. Patent Application Publication No. 2007/0055411 (Nihei) and U.S. Patent Application Publication No. 2006/0208864 (Nantz). Nihei teaches a system for wirelessly setting the identifier of a sensor in a tire-pressure monitoring system; it teaches every limitation of the asserted claims except for the limitations relating to copying the identifier from an old sensor to a new sensor. Appx2855-2949; *see* Opening-Response Br. 36-42. Those limitations are taught by Nantz, which teaches that when an existing detector is damaged and must be replaced, a setting apparatus can set the identifier of a new detector to that of the existing detector. Appx3743; *see* Opening-Response Br. 41. Autel's expert, Dr. Shukri Souri, testified that a person of ordinary skill in the art who wanted

to wirelessly copy an identifier from an old sensor to a new sensor (as Nantz teaches) would be motivated to combine Nantz with Nihei's wireless system. Appx2862; *see* Opening-Response Br. 42.

The district court credited only Orange's argument that Nihei and Nantz did not disclose the limitations that the setting apparatus used to update the new sensor be "portable" and allow for "manual input." Appx55; *see* Appx3507. As Autel explained, Nihei discloses both limitations: Nihei discloses a "setting device" that, together with a "PC" such as a laptop, forms the "setting apparatus" described in the asserted claims. Opening-Response Br. 43-46 (quoting Appx2917). That setting apparatus is "portable," both in the sense that it is not connected to the vehicle (which the sense used in the asserted claims), and in the sense of handheld (which is the sense in which Orange's expert McAlexander tried to use the term at trial). *Id.* at 43-45. And a laptop obviously allows for manual input. *Id.* at 45.

Orange barely responds. It argues (Response-Reply Br. 18) that Nihei does not teach a portable setting apparatus with manual input capability, because what Nihei calls a "setting device" does not allow for manual input and instead relies on the tethered "PC" for that input. But Autel's expert, Dr. Souri, explained that a person of ordinary skill in the art would not artificially limit "setting apparatus" to just Nihei's "setting device," but would

consider the "setting device" together with the PC to which it is attached as a "setting apparatus." Appx2917. Notably, Orange's expert McAlexander did not dispute that Nihei's setting device should be considered in "combination" with the PC. Appx3154. Nor did he dispute that the PC has manual input capabilities. *Id.*

Orange next argues (Response-Reply Br. 18-19) that the combination of Nihei's setting device and PC is not "portable." That is incorrect. McAlexander conceded that the "PC" in Nihei could be a "laptop," which obviously is "portable"; nothing in Nihei limits the "PC" to a desktop computer. Appx3166. Orange has no response to that testimony. Anyway, even if Nihei's "PC" were restricted only to a desktop, it still would be "portable" in the sense that it would not be connected to the vehicle – which is the sense used in the asserted claims. *See* Appx128-29 (reciting a "setting apparatus" that is "not equipped in the vehicle and is portable *relative to the vehicle*" (emphasis added)).[1] Again, Orange has no response.

---

[1] Orange suggests (Response-Reply Br. 2) that this is not the ordinary meaning of "portable." That is incorrect. The ordinary meaning of a claim term "is its meaning to the ordinary artisan after reading the entire patent," *Eon Corp. IP Holdings v. Silver Spring Networks*, 815 F.3d 1314, 1320 (Fed. Cir. 2016) (internal quotation marks omitted), and here, the patent makes clear that "portable" means "portable relative to the vehicle," Appx128.

Orange further argues (Response-Reply Br. 19) that Nantz also teaches an "immobilizer" that is not portable because it is part of the vehicle. *See* Appx3743. But *Nantz*'s immobilizer (a separate anti-theft device that prevents the vehicle from operating when triggered) is not relevant to *Nihei*'s setting apparatus for updating tire pressure sensor identifiers. Nihei does not teach an immobilizer, and Orange does not explain why a person of ordinary skill in the art would consider Nantz's immobilizer in determining whether Nihei teaches a portable setting apparatus with manual input capability. To the contrary, Nantz expressly notes that transmitting new identifiers is "independent[] of vehicle immobilization," which makes clear that the immobilizer is not a necessary part of Nantz's teachings related to updating identifiers. *Id.* And nothing in Nihei suggests that its setting apparatus requires an immobilizer to update the identifiers of tire pressure sensors or that a person of ordinary skill should import an immobilizer from Nantz into Nihei.

### B. Orange's Remaining Arguments Lack Merit

Orange makes three additional arguments regarding obviousness. The district court did not accept any of those arguments, *see* Appx55, and neither should this Court.

First, Orange argues (Response-Reply Br. 14-16) that when Nihei's setting device transmits a new identifier to a sensor, it also transmits the identifier to the vehicle's on-board computer. According to Orange (Response-Reply Br. 15), that distinguishes Nihei from the asserted claims, because in the asserted claims the sensor's identifier is updated without updating the vehicle's on-board computer. But Autel has never argued that Nihei alone teaches all of the limitations of the asserted claims; its argument is that Nihei must be considered in combination with Nantz. *See* Appx2934.

Specifically, Nihei teaches wirelessly updating the sensor's identifier to both the new sensor and the vehicle's on-board computer, *see* Appx2861, and Nantz teaches that the identifier can be that of the old sensor, *see* Appx3743, so a person of ordinary skill in the art would use the two references together to transmit the old sensor's identifier to just the new sensor, *see* Appx2934. That would make it unnecessary to send the identifier to the vehicle's on-board computer. Anyway, even if Nihei's system can also send the identifier to the vehicle's on-board computer, the asserted claims do not prohibit doing so. *See* Appx128-29. That Nihei's system can do more than the systems disclosed by the asserted claims does not make the asserted claims less obvious.

Second, Orange argues (Response-Reply Br. 16-17) that Nantz teaches a sensor with a two-way low frequency receiver and transmitter, whereas the sensor in the asserted claims use a one-way low frequency receiver to receive programming instructions, and a one-way radio frequency transmitter to transmit data. That is incorrect. The claims recite using low frequency signals to receive instructions and radio frequency signals to transmit data, but they do not limit the sensors to one-way receivers or transmitters (*i.e.*, they do not prohibit the sensors from also transmitting low frequency signals). *See* Appx128-129. Nantz's two-way receivers and transmitters thus are entirely compatible with the asserted claims.

In any event, the relevant reference on the transmission system is Nihei, not Nantz. Nihei teaches a sensor with a "receiver circuit" that is "configured to receive a radio wave of . . . 125 kHz," which is a low frequency signal. Appx3754. Nihei also teaches that the sensor can transmit its data at "315 MHz," which is a radio frequency signal. Appx3754; *see* Appx2870. So Nihei's sensor, like the sensor in the asserted claims, receives a low frequency signal and transmits a radio frequency signal.

Nothing in Nantz purports to criticize, discredit, or teach away from that approach. *See* Opening-Response Br. 48-49. So a person of ordinary skill in the art that sought to combine Nantz's idea of cloning the sensor

identifier with the transmission system taught by Nihei would not feel compelled to change the frequencies in Nihei's sensor.

Third, Orange notes (Response-Reply Br. 17-18) that Nantz teaches an alternative approach: Instead of the new sensor receiving the identifier of the old sensor and using that identifier as its own, the new sensor can come with a "bank" of potential identifiers stored in its memory and the system can choose one of those identifiers for the sensor to use. *See* Appx3743. But the fact that Nantz also teaches this alternative approach is irrelevant – it is undisputed that Nantz teaches copying the identifier of the old sensor. *See id.* Autel has not relied on the alternative approach for its obviousness analysis, and Orange does not explain why the mere fact that Nantz *also* teaches the alternative approach would prevent a person of ordinary skill in the art from combining Nantz's teaching about copying the old sensor's identifier with Nihei's system for wirelessly updating the identifier. As Dr. Souri explained, when implementing Nantz's concept of cloning the identifier, a person of ordinary skill in the art would not also implement Nantz's concept of using a bank of identifiers, as that is not needed to carry out the cloning concept. *See* Appx2930-2931.

The bottom line is that Nihei and Nantz together teach every limitation of the asserted claims, and it would have been obvious for a person of

ordinary skill in the art to combine the two references in the same way as the asserted claims.

## CONCLUSION

For these reasons and the reasons set out in the opening-response brief, the Court should reverse the district court's judgment that the asserted claims are not invalid and should affirm the district court's judgment of non-infringement.

Dated: January 8, 2025

Respectfully submitted,

/s/ *Nicole A. Saharsky*

Nicole A. Saharsky
Gary M. Hnath
James A. Fussell, III
Bryan C. Nese
Minh Nguyen-Dang
Clark S. Bakewell
MAYER BROWN LLP
1999 K Street NW
Washington, DC 20006
(202) 263-3052
nsaharsky@mayerbrown.com

Hao Tan
Shen Wang
ARCH & LAKE LLP
203 N. LaSalle Street, Suite 2100
Chicago, IL 60601
(312) 558-1369

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), undersigned counsel certifies that this brief:

(i) complies with the type-volume limitation of Circuit Rule 28.1(b)(3)(A) because it contains 3,970 words, including footnotes and excluding the parts of the brief exempted by Rule 32(f); and

(ii) complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared using Microsoft Office Word 2016 and is set in Century Schoolbook font in a size equivalent to 14 points or larger.

Dated: January 8, 2025

/s/ *Nicole A. Saharsky*
Nicole A. Saharsky

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit by using the appellate CM/ECF system on January 8, 2025. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ *Nicole A. Saharsky*
Nicole A. Saharsky